IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOBBY J. JOHNSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 1:08-cv-0050-WTL-TAB |
| ) | |
| HIX WRECKER SERVICE, INC., JAMES ) | |
| HIX, OVA HIX, and GAIL NEAL, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' ADDITIONAL BRIEFING REGARDING "VEHICLE WEIGHT" OF WRECKERS DRIVEN BY PLAINTIFF

Comes now Defendants, HIX WRECKER SERVICE, INC. ("HWS"), JAMES HIX, OVA HIX, and GAIL NEAL, by counsel, and at the direction of this Court submit additional briefing regarding the significance of Plaintiff's assertion that the vehicles he drove during his employment with Hix Wrecker Service, Inc. weighed less than the thousand one (10,001) pounds.

Plaintiff's 'new' argument presupposes a number of conclusions which are not supported by the record in this matter, nor are they required by the applicable statutory and regulatory language at issue. Among these presumed conclusions are that Plaintiff must have driven a commercial motor vehicle in order to be covered by the MCA exemption, or that Plaintiff's repeated use of **emphasized** phrases "continuing duties", "regular duties", or "normal duties" have any legal or evidentiary relevance in this matter.

Defendants do not waive or acquiesce on any issues not specifically addressed in this filing, and do not expressly or implicitly adopt Plaintiff's positions with respect to the other 'requirements' of the MCA exemption. Rather than re-brief these myriad issues, Defendants' filing will be limited to the single issue identified by this Court in its Entry of May 31, 2012. *See Doc. #150.*

## **PLAINTIFF'S "NEW" ARGUMENT DOES NOT APPLY**

I.   Plaintiff's "new" argument is not new. Throughout this case, Defendants have cited to the relevant statutory provisions in effect during Plaintiff's employment. *See Doc. # 44 at pg. 4.*

II.   Plaintiff's "new" argument is wholly without merit, because the argument blatantly misrepresents to this Court the relevant statutory provisions in effect during Plaintiff's employment.

III.   Under the relevant statutory provisions in effect during Plaintiff's employment, Defendants do not need to show that the Plaintiff actually drove or was subject to driving a vehicle that weighed over 10,000 pounds. Instead, Defendants need only demonstrate that HWS (and not Plaintiff himself) operated "commercial motor vehicles" during Plaintiff's employment.

IV.   Even if Plaintiff's "new" argument were persuasive, it would not change the outcome in this matter. Every vehicle that HWS operated during Plaintiff's employment weighed more than 10,000 pounds. Therefore, each and every vehicle that Plaintiff drove or could have driven during his employment with HWS weighed more than 10,000 pounds.

## **PLAINTIFF'S "NEW" ARGUMENT**

In Plaintiff's "Proposed Findings of Fact and Conclusions of Law," filed April 23, 2012, and found at Doc. #147, he argues the following:

(1) That during the period relevant to this matter, the MCA exemption did "not apply to drivers of vehicles weighing 10,000 pounds or less." *See Doc 147, p. 5*. and

(2) That the trucks that Mr. Johnson drove weighed less than 10,000 pounds. *See Id.*

According to Plaintiff's argument, these would operate to exclude Mr. Johnson from coverage under the MCA exemption.

In support of his "new" claim, Plaintiff states that "As of August 10, 2005, the MCA exemption was changed to not apply to drivers of vehicles weighing 10,000 pounds or less." *See Doc 147, pg. 5.*

Plaintiff's argument is simply wrong. The amendment which purportedly altered the application of the overtime exemption to drivers of vehicles weighing 10,000 pounds or less became effective in June, 2008. This amendment occurred well after Plaintiff's period of employment by HWS, which lasted only from June, 2006 until October, 2006.

To support his position, Plaintiff directs this Court's attention to (but curiously does not directly quote from) *Brooks v. Halsted Communications, LTD*, 620 F. Supp. 193, at 197 (D. Mass. 2009). *See Doc. # 147, at pg. 5.*

Plaintiff's citation to *Brooks* does not support his conclusion regarding the applicable legal standard to be applied in this case. In fact, it does not even represent an accurate restatement of the standard applied in *that* case. *See Brooks, at pp. 197-198, discussing only the*

*impact of the 2005 amendment as it might apply to employers who did not operate any vehicles weighing more than 10,000 pounds.)*

Plaintiff's assertion seems to conflate the operation of the 2008 amendment and assign its impact to the 2005 amendment.  It seems incongruous to believe that such a mistake could be made almost seven (7) years after the 2005 amendment became effective.

Whether or not this misrepresentation was intentional, Plaintiff endeavored to convince this Court to apply the wrong legal standard in this case, and has forced Defendants to respond to what amounts to a spurious claim.

### APPLICATION OF STATUORY CHANGES TO THE MCA/OVERTIME EXEMPTION

### Public Law 109-59 - "SAFETEA-LU"

Public Law 109-59, known by its 'short title' as the ''Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users'' or ''SAFETEA–LU'' became effective August 10, 2005.

Prior to August 10, 2005, "motor carrier" was defined at 49 U.S.C. §13102 as "a person providing motor vehicle transportation for compensation."  For the purpose of applying the MCA exemption to employers, the term "motor vehicle" was not defined elsewhere in the code.  Thus, the exemption was broadly applied to employers who operated any motor vehicles, so long as all of the other statutory requirements for the exemption were met.

SAFETEA-LU changed only the definition of "motor carrier" as that term was defined at 49 U.S.C. §13102.

Specifically,

Section 4142(a) amended 49 U.S.C. §13102 by striking "motor vehicle" and inserting "commercial motor vehicle (as defined in section 31132.)"  *See (Public Law 109-59; 119 Stat. 1747).*

The definition of "commercial motor vehicle" had already existed at §31132 and has not since changed.

It must be noted that SAFETEA-LU changed only the definition of "motor carrier," and therefore altered the application of the MCA exemption <u>with respect to the employer only.</u>  No changes were made which would alter the application with respect to any particular employee or class of employees.

The courts within the Seventh Circuit have obviously been examining the exemption's application to employees or groups of employees (rather than all those employed by that employer) at least since *Goldberg v. Faber*, 291 F.2d 232 (7th Cir. 1961).  But SAFETA-LU made no statutory changes which would alter how the courts applied the MCA exemption to the particular employees of a "motor carrier."

### Public Law 110-244 - The "TCA"

Public Law 110-244, known by its 'short title' as the "SAFETEA-LU Technical Corrections Act of 2008" or "TCA" became effective on June 7, 2008.

This amendment affected the application of the MCA exemption in two (2) important ways.  First, the definition of "motor carrier" was changed back to its pre-SAFETEA-LU definition, meaning that the analysis <u>with respect to the employer only</u> went back to its broader definition.  Second, this amendment created a definition of "Covered Employee."  The apparent purpose of this new definition was to extend FLSA (overtime) coverage to certain employees, even if those employees would have otherwise been overtime-exempt under the MCA.

Specifically,

(1) Section 305 (c) changed the definition of "motor carrier" back to its prior language, by striking "commercial motor vehicle (as defined in section 31132)" and inserting "motor vehicle." *See (Public Law 110-244; 122 Stat. 1620).*

(2) Section 306 (c) created what has been called the "Small Vehicle Exception" to the MCA overtime exemption. This exception creates a new definition of "covered employees." *See (Public Law 110-244; 122 Stat. 1621).*

In effect, the language of section 306 (c) <u>examines the employee's activities</u>, and whether those activities are performed on vehicles weighing 10,000 pounds or less.

Consequently, an analysis based more directly on the employee's activities as those activities related to operating or affecting the safety of vehicles weighing 10,000 pounds or less became necessary only after the enactment of TCA in June of 2008.

## **THE STANDARD APPLICABLE IN THIS MATTER**

As it appears in Defendants' "Memorandum of Law in Support of Partial Summary Judgment," filed with this Court in December, 2008,

> The motor carrier exemption, found at § 213(b)(1) of the FLSA, applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of §31502 of Title 49." See 29 U.S.C. § 213(b)(1). Section 31502 of Title 49 is part of the so-called "Motor Carrier Act," which is now found at 49 U.S.C., §§31501 through 31504. However, relevant terms used in §31502 are defined in §31501, which in turn references definitions found in §13102 of the same Title 49. The terms used in §13102 are defined in yet another section of Title 49.

>Thankfully, the analysis in *Elliot* provides a succinct and on-point statement of the requirements for exemption from overtime. See *Elliot*, 2006 WL 284975 * 3.
>
>The following is HWS's attempt at defining the exemption for the purposes of the Case:
>
>The motor carrier exemption applies to employees who are employed by a *motor carrier; 49 U.S.C. §31502(b) and providing **commercial motor vehicle…transportation for compensation; 49 U.S.C. §13102. See *Elliot*, 2006 WL 284975 * 3
>
>*Motor Carrier is "a person providing **commercial motor vehicle transportation for compensation." See 49 U.S.C. §13102(14).  **Commercial Motor Vehicle is "a self-propelled or towed vehicle used on the highways in interstate commerce to transport property, if the vehicle has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater."  See 49 U.S.C. §31132(1).    *See Doc. # 44, pg. 4.*

Specifically, a "commercial motor vehicle" is a self-propelled or towed vehicle used on the highways in interstate commerce to transport property, **if the vehicle has a gross vehicle weight rating OR gross vehicle weight of at least 10,001 pounds, whichever is greater[;]**. (emphasis added.)

The definition provided in 49 U.S.C. §31132(1) (A), includes two (2) separate ways by which a vehicle may qualify as a commercial motor vehicle, or "CMV."  The first is that the vehicle "h**as a gross vehicle weight rating… of at least 10,001 pounds"** and the second is that the vehicle **has a gross vehicle weight… of at least 10,001 pounds**.  So long as the vehicle meets **either one** of these standards, it is a CMV.

Consequently, HWS does not have to prove that the vehicles driven by Mr. Johnson weighed 10,001 pounds or more. HWS does not even have to show that the vehicles driven by Mr. Johnson had a Gross Vehicle Weight Rating (GVWR) of 10,001 pounds or more.

Rather, a showing that the vehicles operated by HWS had a Gross Vehicle Weight Rating of 10,001 pounds or more satisfies the definition.

It is important to note that Plaintiff has never before made any reference to this "new" standard in any of his filings, all of these months and years after the TCA amendment became effective. Indeed, Defendants' summary judgment motions were filed with this Court in December 2008, more than six months after TCA. *See Doc. # 44.* Plaintiff's response was filed with this Court on April 30, 2009, nearly eleven months after afterwards. *See Doc. 86.*

Defendants cannot presume that Plaintiff was ignorant of the existence of TCA amendments at the time he filed his response, nor was he innocently uninformed of the "new" legal standard until after this Court held a trial on the case.

## GROSS VEHICLE WEIGHT RATING (GVWR)

As defined in USDOT's regulations found at 49 CFR Part 571.1, "Gross vehicle weight rating (GVWR) means the value specified by the manufacturer as the **loaded weight** of a single vehicle." (emphasis added.) The identical definition appears in 49 CFR Part 383.5, and most likely in other parts of DOT's regulations. This manufacturer-specified information is typically displayed on a sticker or placard on driver's side door or doorjamb.

The GVWR of a vehicle is important tool for assuring the safe operation of motor vehicles on public roads and highways. If a vehicle's GVWR placard is missing, enforcement officers may 'presume' that the vehicle's actual weight is such that it is in the heaviest vehicle

class to which it could reasonably belong, and possibly cite the driver and/or carrier for not being properly licensed or credentialed. This rebuttable presumption is available to officers in order to discourage carriers from intentionally obscuring the GVWR or true weight of a vehicle in order to escape enforcement of safety standards. *See Interpretation for 49 CFR Part 383.5.* Based solely on the definition used by DOT, it is clear that the actual weight of an unloaded vehicle will necessarily be less than the manufacturer's GVWR for that same vehicle. Any other conclusion would be absurd on its face.

## **GROSS VEHICLE WEIGHT**

In the absence of a manufacturer-declared GVWR, or if the vehicle's stated GVWR were below 10,001 pounds, the vehicle might still qualify as a CMV, if it actually weighs at least 10,001 pounds. This conclusion clearly mirrors the language contained in the "commercial motor vehicle" definition, and is also reflected in safety regulations. Any other reading of this definition would lead to the absurd result of exempting heavy vehicles from DOT's jurisdiction if the manufacturer assigned an artificially low GVWR to the vehicle.

## **VEHICLES OPERATED BY HWS**

As discussed *supra*, in order for HWS to qualify for the MCA exemption during the period of Plaintiff's employment, HWS need only establish that it operated "commercial motor vehicles" during this period.

This threshold is met by numerous examples contained in the record of this case.

This Court may look to Defendants'' Trial Exhibit #1, which document is also included on the electronic docketing system as Doc. #125-1. This document shows several examples of interstate trips that HWS took during Plaintiff's employment.

This Court may also look to the Trial Transcript for references to vehicles operated by HWS during Plaintiff's period of employment. That transcript contains numerous references by both Mr. Johnson and Mrs. Neal regarding whether a particular vehicle could be operated by a drive holding a federal "Commercial Driver's License," or CDL, of Class A, B or C. *See Trasncript, pp. 13-14, inclusive; also pp. 40-41 inclusive.*

The driver of any motor vehicle with a GVWR of 26,001 pounds or more is required by federal law to possess either a Class A or Class B CDL. Drivers of some vehicles which do not have a GVWR of 26,001 pounds or more may still be required to possess a CDL, but those vehicles are not at issue in this case. *See 49 CFR, Part 383.*

## **VEHICLES ACTUALLY DRIVEN BY PLAINTIFF**

In the event that this Court finds Plaintiff's "new" argument persuasive, Defendants offer the following:

During Plaintiff's employment with HWS, he drove a "flat bed" wrecker, with a steel bed somewhere between 18 and 21 feet in length.

Mr. Johnson testified at trial that he drove a "flatbed truck." *See Transcript, pg. 9, line 16.*

Mr. Johnson further testified at trial that the truck he drove was a 2005 International 4300 flatbed… with a steel bed, of either 19 or 21 feet in length. *See Transcript, pg. 10, lines 13-15, 20-23.*

Mrs. Neal testified that the trucks driven by Mr. Johnson might have been Ford, International, or GMC, but all were flat bed trucks, 18 to 21 [feet] long. *See Transcript, pg. 39, lines 4-6, 9, 11, 12.*

Mr. Johnson also testified that and that the truck was able to tow two (2) vehicles with it at one time, "one on the front of the truck and one on the back of the truck on what they call a Stinger or wheel lift. *See Transcript, pg. 10, lines 13-15, 20-23.*

Mr. Johnson, when asked by his counsel "how much the trucked weighed, just the truck by itself," estimated its [unloaded] weight to be 7 to 8,000 pounds, maybe. *See Transcript, pg. 11, lines 3-6.*

But Mr. Johnson also testified that when towing a single vehicle, the vehicle would be brought up onto the flat bed, lifting the whole vehicle off the ground. *See Transcript, pg. 10, lines 24-25, and pg. 11, line 1.*

Taking Mr. Johnson's own "wild guess" of 7,000 pound weight of the unloaded truck, and combining that with the weight of any vehicle that he transported, (that vehicle having been lifted completely off of the roadway) leads to the obvious conclusion that <u>each and every time Plaintiff transported a vehicle, the "gross vehicle weight" of his flat bed truck exceeded 10,000 pounds, thereby exempting him from ANY version of overtime requirement of the FLSA.</u>

A list of towing activities which Plaintiff claims to have performed is already in the record. *See Doc. # 85-6.* This list was compiled by Plaintiff's attorney's offices. *See Doc. # 85-5.*

## **TYPICAL FLAT BED VEHICLE OPERATED BY PLAINTIFF**

Notwithstanding the particular manufacturer of the wrecker's cab/chassis, it is undisputed that all of the vehicles driven by Mr. Johnson during his employment with Hix Wrecker Service, Inc. were flatbed wreckers, with a steel flat bed 18 to 21 feet in length.

Attached in Exhibit A are several documents related to "Truck 10," a truck with a steel flat bed 18 to 21 feet long, and currently in service with HWS. Truck 10 is a Ford F650 chassis/cab with a 224" wheelbase. *See "GVWR Placard" Exhibit A, pg. 1*. This chassis was fitted with a "Jerr-Dan" steel-deck "carrier" bed, functionally identical in size, weight, and capacity to the flat bed vehicles driven by Plaintiff during his employment with HWS.

Truck 10 was purchased by HWS on December 7, 2006; fewer than two (2) months after Plaintiff's employment with HWS ended. *See "Registration," Exhibit A, pg. 2*.

Truck 10 has a manufacturer-declared "Gross Vehicle Weight Rating" of 26,000 pounds. *See "GVWR Placard" Exhibit A, pg. 1*.

Truck 10 is representative of each and every flat bed truck in HWS's fleet that Mr. Johnson could have legally driven during his employment.

Pursuant to federal law, the largest vehicle which may legally be driven by a driver *not* possessing a Class A or Class B CDL is 26,000 pounds.

## SUMMARY

The correct legal standard to be applied in this case is the standard which was in effect during Plaintiff's employment with Hix Wrecker Service, Inc. Plaintiff worked at HWS from June 2006 until October 2006.

Defendants have throughout this litigation used the definitions and legal standards as they existed at the time of Plaintiff's employment.

Defendants have more than demonstrated that during Plaintiff's employment, Hix Wrecker Service, Inc., provided "commercial motor vehicle" transportation for compensation.

Although not necessary to satisfy <u>the relevant</u> legal standard, Defendants have demonstrated that Plaintiff operated commercial motor vehicles, during his employment.

Although not necessary to satisfy <u>the relevant</u> legal standard, Defendants have demonstrated that Plaintiff operated vehicles which weighed 10,000 pounds or more during his employment.

Whether this Court elects to apply the pre-2005 standard, the standard in effect between August, 2005 and June, 2008 or the standard in effect June 7, 2008 and thereafter, Mr. Johnson was at all times, subject to the MCA exemption to FLSA overtime.

Plaintiff's attempt to have this Court apply the standard as amended by the 2008 TCA should have been presented in

1. his own motion for summary judgment or,
2. his response to Defendants' summary judgment or,
3. his appeal to the Seventh Circuit or,
4. the trial held by this Court in March.

Plaintiff's attempt to alter the legal standard used in this case more than three (3) years after his summary judgment motions, and almost four (4) years after the TCA amendment was enacted should be viewed by this Court as a collateral attack on issues already adjudicated.

WHEREFORE, Defendants pray that the Court Apply the legal standard in effect during Plaintiff's Employment, strike Plaintiff's proposed findings of fact and conclusions of law, find for Defendants in this cause, and for all other just relief.

Respectfully submitted,

<u>June 25, 2012</u>                                                By:   <u>s/ Russell W. Pool</u>

Date                                                                    Signature

                                              Russell W. Pool,   Attorney No. 25055-49
                                              Douglas W. Pool & Associates
                                              Tel.    (317) 713-9200
                                              Fax.   (317) 713-9210
                                              E-mail:  rpool@dwplegal.com


## CERTIFICATE OF SERVICE

       I certify that a copy of the foregoing was filed electronically on this 25th day of June, 2012.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


Ronald E. Weldy
Weldy & Associates
8383 Craig St., STE 330
Indianapolis, IN 46250
E-mail: weldy@weldylaw.com

June 25, 2012                                                         s/ Russell W. Pool
Date                                                                    Signature

                                              Russell W. Pool   Attorney No. 25055-49
                                              Douglas W. Pool & Associates