UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOBBY J. JOHNSON, JR., | ) |
| | ) |
|    Plaintiff , | ) |
| | ) |
|    vs. | ) CAUSE NO. 1:08-cv-50-WTL-TAB |
| | ) |
| HIX WRECKER SERVICE, INC., et al., | ) |
| | ) |
|    Defendants. | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING TRIAL**

A bench trial was held in this case on March 23, 2012, and September 19, 2012,[1] on the issue of liability. Specifically, by agreement of the parties, the first phase of the bench trial was limited to the following issues: (1) whether the individual Defendants were the Plaintiff's "employers" as that term is defined by the Fair Labor Standards Act ("FLSA"); and (2) whether the motor carrier exemption to the FLSA applied to the Plaintiff during all or part of his employment with the Defendant. The Court hereby makes the following findings of fact and conclusions of law regarding the issue of liability.[2]

---

[1] The Court recognizes the Plaintiff's strenuous objection to the reopening of the liability phase of trial to receive additional evidence. Plaintiff's counsel was very frank about the basis for his objection; he was, in his words, deprived of his "gotcha moment." While the Court acknowledges Plaintiff's counsel's desire to be a modern day Perry Mason, the fact is that "litigation under the Federal Rules of Civil Procedure is not supposed to be merely a game, a joust, a contest; it is also a quest for truth and justice." *Ash v. Wallenmeyer,* 879 F.2d 272, 275 (7th Cir. 1989). Further, the Court notes the irony of Plaintiff's counsel's outrage: Plaintiff's counsel missed the deadline for filing his post-trial brief by ten days and was only able to raise his "gotcha" argument at all because the Court exercised its discretion and permitted him to do so despite his failure to file a timely motion for an extension. The Court did so in order to give the Plaintiff a full and fair opportunity to be heard and to permit this case to be decided on the merits, rather than on the foibles of counsel. The Court simply exercised its discretion to extend the same opportunity to the Defendants by reopening the evidence.

[2] Any finding of fact more appropriately considered a conclusion of law should be so deemed and vice versa.

I. **FINDINGS OF FACT**

Defendant Hix Wrecker Service, Inc., ("HWS") is an Indianapolis business that, as its name suggests, performs wrecker services; the remaining Defendants–James Hix, Ova Hix, and Gail Neal–are individuals who own, manage and/or operate HWS and share responsibility for establishing all of the policies and procedures of HWS. HWS has during all relevant times had a common carrier certificate of authority from the United States Department of Transportation that permits it to transport property in interstate commerce. HWS also solicited out-of-state business from its customers at all relevant times.

Plaintiff Bobby J. Johnson, Jr., worked for HWS as a tow truck driver from June 6, 2006, to sometime in September 2006. His regular duties included changing tires for customers, towing vehicles for dealerships, unlocking vehicles for customers, towing improperly parked vehicles, and towing vehicles that had been impounded by law enforcement. The parties agree that Johnson's work for HWS affected interstate commerce.

During the course of his employment with HWS, Johnson drove at least two different trucks. At least one of the trucks driven by Johnson was a 2005 International 4300 truck with a 19- or 21-foot flat bed that was cable of towing two vehicles at one time. That type of truck has a gross vehicle weight rating of 26,000 pounds.

Johnson performed all of his duties within the state of Indiana. However, other HWS employees traveled across state lines to pick up or deliver vehicles during the period of Johnson's employment. Specifically, an HWS driver traveled to Kentucky to deliver a vehicle on June 15, 2006, just a few days after Johnson began working at HWS. HWS drivers also traveled to Ohio on July 18, 2006, and August 23, 2006, and September 6, 2006. HWS assigns its drivers to towing runs as they arise; if it had been Johnson's turn to be assigned when an

interstate run arose, he would have been assigned to it.

## II. CONCLUSIONS OF LAW

Johnson asserted several claims in his complaint. The only remaining claim before the Court is Johnson's claim that the Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.*, by failing to pay him overtime wages for occasions in which he worked more than forty hours in a given week.

The Court finds that the individual Defendants–James Hix, Ova Hix, and Gail Neal–are employers as that term is defined by the FLSA. Specifically, the FLSA defines "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C.A. § 203(d), and the evidence shows that the individual Defendants all shared responsibility for the operation of HWS as a business and as an employer, including establishing the policies that HWS followed. Therefore all of the Defendants were responsible for complying with the FLSA vis-a-vis Johnson, and all of the Defendants are subject to liability for any failure to comply with the FLSA.

The Defendants have asserted an affirmative defense to Johnson's claim for overtime pay, arguing that the FLSA overtime provisions were inapplicable to Johnson because the motor carrier exemption applied to him during his employment with HWS. The Defendants have the burden of proving this affirmative defense.

The motor carrier exemption is found at 29 U.S.C. § 213(b)(1) and provides that "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" is exempt from the overtime provisions of the FLSA. Among other things, 49 U.S.C. § 31502 extends the Secretary of Transportation's power to "employees of, and safety of operation

and equipment of, a motor carrier." HWS alleges that the motor carrier exemption applied to Johnson because it was at all relevant times a "motor carrier" and Johnson was its "employee."

The threshold question, then, is whether HWS in fact was a "motor carrier" during the time of Johnson's employment with HWS. During the relevant time period, "motor carrier" was defined as "a person providing commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14) (2005); *see also* 49 U.S.C. § 31501(2) (referring to that definition of "motor carrier" for purposes of § 31502). "Commercial motor vehicle," in turn, was defined, in relevant part, as a "vehicle used on the highways in interstate commerce to transport . . . property . . . if the vehicle . . . has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1)(A). In order to satisfy the definition of "motor carrier," then, HWS must have satisfied two criteria: (1) it must have transported property in interstate commerce; and (2) it must have operated vehicles that weighed or had a gross vehicle weight rating of at least 10,001 pounds.

With regard to the first requirement, the evidence is clear that HWS did, in fact, transport property in interstate commerce. As noted above, HWS solicited out-of-state business and its employees actually traveled across state lines to pick up or deliver vehicles numerous times during the period of Johnson's employment. With regard to the second requirement, Johnson testified that he drove a 2005 International 4300 flatbed truck with a 19- or 21-foot bed that was capable of towing two vehicles at one time. Defendant Neal testified that that kind of truck has a gross vehicle weight rating of 26,000 pounds and that all of the trucks operated by HWS have a gross vehicle weight rating of at least 10,001 pounds. Accordingly, the Court finds that HWS satisfied the definition of a "motor carrier" during the relevant time period.

Not everyone employed by a motor carrier falls under the exemption, however.

"Employee" was (and is) defined, in relevant part, as "an operator of a commercial motor vehicle." Thus Johnson himself could have been subject to the FLSA overtime provisions even though he was employed by a motor carrier if the particular work that he performed did not make him an "employee of a motor carrier" as defined by the relevant statutes–that is, if he did not operate a commercial motor vehicle.

"Commercial motor vehicle," again, was defined, in relevant part, as a "vehicle used on the highways in interstate commerce to transport . . . property . . . if the vehicle . . . has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1)(A). With regard to the weight requirement, the evidence of record is as noted above; the trucks operated by Johnson had a gross vehicle weight rating of at least 10,000 pounds and therefore Johnson was "an operator of a commercial motor vehicle" when he worked for HWS.

With regard to the interstate commerce requirement, the evidence of record is that Johnson performed all of his duties within Indiana. However, "[a]n employee comes within the Secretary of Transportation's jurisdiction so long as the employee is subject, at any time, to being assigned to interstate trips. A minor involvement in interstate commerce as a regular part of an employee's duties subjects that employee to the Secretary of Transportation's jurisdiction." *Johnson v. Hix Wrecker Service, Inc.*, 651 F.3d 658, 661-62 (7th Cir. 2011) (citations omitted). The Department of Transportation has promulgated a notice of interpretation through the Federal Highway Administration that clarifies the extent of the Secretary of Transportation's jurisdiction over motor carrier employees as follows:

> For an employee to fall under the Secretary of Transportation's jurisdiction, "the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question.

> The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof, in the case of a 'for hire' carrier, that interstate business has been solicited. If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs. Satisfactory evidence would be statements from drivers and carriers, and any employment agreements."

*Johnson,* 651 F.3d at 661 (quoting the notice of interpretation found at 46 Fed. Reg. 37,902).

> The notice of interpretation further provides that evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to the Secretary of Transportation's jurisdiction for a 4-month period from the date of proof. The Federal Highway Administration considers the four-month period to be reasonable because it avoids both the too strict, week-by-week approach and the situation where a driver could be used or be subject to being used in interstate commerce only once and yet remain subject to the Secretary of Transportation's jurisdiction for an unlimited time.

*Id.* (internal quotation marks omitted).

The Court finds that HWS has demonstrated that its drivers regularly (i.e. at least once per month) conducted out-of-state runs during the period of Johnson's employment and that Johnson was subject to being assigned to any of these runs. Accordingly, Johnson was an employee of a motor carrier as defined by the Motor Carrier Act. As such, Johnson was subject to the motor carrier exemption to the FLSA and was not entitled to overtime pay.

One final note is in order. In his proposed findings, Johnson's counsel urges the Court to find that Johnson "could not drive out-of-state because he did not keep a DOT log book." Johnson testified at trial that if a driver were driving a truck that required a Class A commercial drivers license ("CDL"), that driver would have to carry a DOT log book if he were going to cross state lines and that he did not have a Class A CDL when he worked for HWS. Johnson's testimony does not support the conclusion urged by his counsel; there is no evidence that

6

Johnson drove a truck for which a Class A CDL was required.  In fact, the Court takes judicial notice that the applicable regulations do not provide that a commercial driver who crosses state lines must always carry a DOT log book.  *See* 49 C.F.R. § 395.1 (setting forth exceptions to the log book requirement).  The Court further takes judicial notice that a CDL is not required for a driver of a tow truck with a gross vehicle weight rating of 26,000 pounds or less.  49 C.F.R. § 383.91(a).  Accordingly, Johnson's testimony combined with the applicable law does not impugn the testimony of Ms. Neal that Johnson was subject to being assigned to an out-of-state run at any time during his employment with HWS.

### III.  CONCLUSION

For the reasons set forth above, the Court determines that Johnson was subject to the motor carrier exemption to the FLSA during his employment at HWS.  Accordingly, the overtime provisions of the FLSA were inapplicable to Johnson.  Judgment will be entered in favor of the Defendants on Johnson's FLSA claim, which is the only claim that remains in this case.

SO ORDERED:   09/26/2012

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification